Good morning Chief Judge Merguia, Judge Graber and Judge Burns. May it please the court. My name is James Azadian and I represent the appellant KCI Restaurant Management LLC. I hope to reserve four minutes for rebuttal and of course I'll be monitoring my time. How can a party win every issue at trial and still lose the case? That shouldn't happen but it did here when the bankruptcy court ten against Scott Seldin based on an unraised affirmative defense and an ill-conceived newly minted legal test. Before addressing the bankruptcy court's errors, however, I want to explain why this case is not moot and answer directly this court's question posed to the advocates. The money KCI seeks through its proof of claim is over and above the 1.25 million dollar payment it well before this bankruptcy proceeding began. The timing of this payment is key for honors. When the bankruptcy proceeding began and KCI filed the proof of claim, the payment received more than a year earlier was already taken into account and KCI sought additional amounts owed beyond that. The parties and the bankruptcy court were well aware of the pre-bankruptcy payment throughout the litigation and no one suggested that somehow meant that KCI's fees had been paid in full. The operative word that I see in this court's order, this court's question, is the word moot. Whether the case is moot because of the 1.25 million dollar payment. Mootness cannot be implicated by the pre-litigation payment because the case cannot be moot before it even starts. That said, I interpret this court's question about mootness to reflect the ever-present concern about article 3 justiciability in general. So let me be clear, when the case began there was a justiciable claim, there remains a justiciable claim, and nothing has happened to change that. The accounting... May I just ask you, there's a six-year statute of limitations and if you... ...the annual fee by six, it comes out to less than the 1.25 million, so perhaps the best way to ask it is if you were to win, would there be available relief, which is perhaps a... I don't know what label you want to put on that. I would think of it as either mootness or something. That's, I think, the source of the question, at least in my mind. Yes, Your Honor, and the accounting provided with the proof of claim establishes that, in fact, there is more money beyond the 1.25 million dollars. And let us assume for a second, for purposes of this court's question, that the 1.25 million dollar pre-bankruptcy petition payment received by Scott Seldin, received by KCI, was all management fees, which of course we know it wasn't. It was, half of it was unreimbursed expenses borne by Scott Seldin. But let us assume for purposes of your question that the entire 1.25 million dollars was, in fact, management fees. The 1.25 million dollar payment received before litigation is probably applied to the oldest unpaid fees first. The bankruptcy court's ruling on the statute of limitation doesn't change that. That ruling applied to the proof of claim asserting the bankruptcy. It does not apply to pre-bankruptcy payments. Why do we know that to be true? Because as Arizona courts have held, and the Arizona state courts, in the absence of an agreement or instruction to the contrary, payments should be applied to the extinguishment of those items or claims that are earliest in point of time. The rule has very recently been laid out by Arizona Supreme Court. And the Supreme Court says that when a debtor owes a creditor several debt obligations, the debtor may choose to apply its payment to a particular obligation. And if the debtor makes no indication, then the creditor may choose to which obligation the payment applies. And if the creditor makes no indication, the rule of law under these circumstances, and I quote, is that the law applies each payment to the obligation oldest in point of time. That's the Braden Machine Company case at 508 P. 2nd, 112 Pennsite 116. But there's also a very good reason, Judge Graber, and a practical reason for why the $1.25 million pre-petition payment was applied to the earlier year, those years that the bankruptcy court said was excluded under the Statute of Limitation. When money is owed under a contract, applying the payment to the oldest amount due first minimizes interest by satisfying the oldest portions, which have been, of course, accruing interest the longest, first. And that's the standard real-world practice to wit. Also keep in mind, please, that our argument about this pre-bankruptcy payment not being tied to the bankruptcy court's ruling. The manager was free to allocate the payment how it deemed best. And for the first reason... Yeah, so I think I have the drift of your argument on this point. And just speaking for myself, I'd appreciate your getting to sort of the bottom line on the merits, which is why, in your view, did the bankruptcy court abuse its discretion in assessing the reasonableness of the claimed fee? It's just something that we review for abuse of discretion, and the bankruptcy court had several reasons that it gave. Thank you, Your Honor. I would very much like to move on to the merits. The basic point that sums up the case is you can't change the rules after the game is over. Counsel, the rules, quote-unquote, allow and require, in fact, as I understand it, the bankruptcy court to determine whether the claimed fees are reasonable, whether they arise from a contract or not. And in this case, the court was concerned in part that it was an insider and not an arm's-length contract. So is your position that the bankruptcy court has to give whatever a contract says in this situation, or does it have to determine what it believes to be reasonable? In this situation, Your Honor, the answer is both. And let me explain why that's not confusing. It is about predetermined management fees, not attorney's fees incurred during a bankruptcy or fees incurred by employees of a state during the bankruptcy. Those are the types of claims where courts generally apply insider scrutiny under section 502b4. While it is understandable, as you know, Judge Graber, that the court would need to fashion some test for reasonableness under these circumstances, the bankruptcy court erred in two basic ways here that prejudice my client. First, the test it fashioned is incorrect. And second, it erred by not giving the parties notice of the test it intended to use. In fact, the test that it stated that it would use when it ruled on summary judgment was that the thrust and the focus of the bankruptcy court's analysis and inquiry would be at 2008 to 2013. Oh, sorry. Go ahead. I'm sorry. Go ahead and finish your answer, Judge. I make it a point not to, okay, I make it a point not to interrupt the judge. And second, it erred by not giving parties the notice of that intended test and the opportunity to address the operative factors that have included, either substantively or factually, that bears underscoring, either substantively or factually. Even the Omaha Seldins concede this is a question of first impression and acknowledge the bankruptcy court's framework for evaluating reasonableness was novel. And that's at page 30 of their answering brief. Judge Murguia, did you have a question? Yes, I did. I mean, because it seems very clear in that you're arguing that the bankruptcy court invented a new test for deciding the exceeded, you allege, a reasonable value of the services under section 502B4 because the judge discussed these six factors. But I'm trying to see, it doesn't look like you ever explain what the proper test should have been for the let me explain what the proper test should be. And let me just also say that the parties do agree, and as I cited on page 30 of their answering brief, that this was a new test that the bankruptcy court created. Also in your response, if you could, please tell me, even if it was a new test, why it was unreasonable? Just because it was new? Is that your point? No, no, that's not my at all. Because it excluded known factors in published decisions that would have, in fact, assisted KCI's case in demonstrating why the payments to Scott were reasonable, or that the payment under the operating agreement to Scott Seldin for the management fee was reasonable. What test should the court have applied is the question on the table asked by Chief Judge Murguia. No test exists to determine the reasonableness of prepetition management fees established by the debtor's operating agreement. The key fact that distinguishes this case from the cases from which the bankruptcy court cobbled together its novel test adopted after trial is that the amount of management fees were set in the operating agreement of the debtor, which was entered into between the debtor, not Scott Seldin, but the debtor to extract, and its original manager, again, not Scott Seldin, that original manager was an entity known as SDP, four years, one, two, three, four, four years before Scott took the job. Scott could not have used any influence as the insider to collude with the debtor to extract exorbitant fees to the detriment of the bankruptcy creditors because he was not- But counsel, counsel, it strikes me that if it was negotiated in a non-arm's-length way, that it's an inflated amount, regardless if this individual was a negotiator or not, why isn't that a permissible inference of Your Honor, I heard you asking me a question. Unfortunately, it was kind of coming in and out. Would you mind restating the question and let me see if I can listen more closely. I'm sorry, we've had a great deal of problem with our audio. Can you hear me now? I certainly can. Okay, I'll try to be a little more reached. And it is not arm's length. Doesn't that permit an inference that the amount is inflated regardless of whether the person who now is taking advantage of it was the one who negotiated it? The answer to your question would be yes, Your Honor, in the abstract. But here in this case, the presumptions that are made in your question do not exist here. Those facts do not exist here. Let me explain. The bankruptcy court simply stated that neither expert discussed whether the management fee was negotiated at arm's length. But expert testimony is not needed to establish that Scott Sullivan actually inherited this agreement negotiated three years prior to accepting the job. I understand that, counsel. Counsel, I understand that. That's why I asked the question about whether it was potentially inflated even if it was negotiated by someone else. I thought your client conceded it was not an arm's length deal when it was originally made. Am I wrong about that? Your Honor, I will have to go back and check the record. But having reviewed this very voluminous record, which I really don't want to be blamed for, please don't hold I did not appreciate that concession. If the court can point me to the record where that's made, I certainly can address it. But I did not appreciate such a concession. Just the opposite, in fact. In the record, we see that our side is arguing throughout in the trial and in the post-trial papers and also before the district court that this was an arm's length transaction. But let us assume, let us assume that it was not an arm's length transaction even then, right, even though I know that I'm of the position that it was. The court should have begun its analysis by looking to the dual purpose of Section 502b4, which courts have consistently defined as protecting the rights of bankruptcy creditors from over generosity by the debtor or inflated compensation extracted by insiders. This case does not implicate either of these concerns. And in this case, Goff Seldin satisfied all the debtors creditors before paying the funds to investors in 2013. He took the 1% management fee, which even the Omaha Seldins testified to was reasonable. And oh, I see I'm over my time. May I finish my sentence? But I had a question. I know you're over your time, but it looks like if you could help me understand this, because it looks like the bankruptcy court found it in a footnote in its summary judgment order, that it wasn't clear which year's management fees, the $1.25 million covered. And that seems like because KCI never explained this, the citations ER 105 note 87. And it doesn't appear that there was an appeal to that finding. I'm not sure. I mean, I'm not sure that it was specified for KCI that the $1.25 million applies only toward the earliest management fees, when the bankruptcy court found that KCI totally failed to explain this. Thank you, I will look in the record to be able to point the court to where we did state that it applied to the earliest fees. It was in the context of the statute of limitations. And when I come back up, the court will give me a few seconds for rebuttal. I will be prepared to answer that specific question. I have the answer now, by the way. But I will take up more of the court's time. Mr. Ionelli, could you please state your appearance, please? Thank you, Your Honor. May it please the court. Greg Ionelli for the Appellee Group we call the Omaha Seldins. Let me start with your just the question we just concluded with Judge Morgia, which is, it is true that the bankruptcy court found that there was never any position taken by KCI, certainly none based on the record or evidence as to a contemporaneous allocation of the $1.2 million. And so if you actually look at the financial statements that are part of the record, you see that it's just a sort of general credit against the amounts against the management fees that are that are due. So there's no allocation to any particular debt. The statement was also made by my friend on the other side that half of that amount of the $1.2 million was actually for unpaid expense reimbursements. That's incorrect, Your Honor, as a matter of the record. The bankruptcy court specifically found and I'll just pick this was found multiple times, but I'll pick one of them. Page 14 of the volume one of the excerpts, quote, no other characterization or attribution of the funds has been offered other than as management fees. Page 76 of the same volume, quote, in the end, Sky Colonial allocated the entire remaining $1.2 million to the payment of by the record. And there's no argument on appeal that those findings were incorrect. So what we have here is basically mootness or as Judge Graver indicated, maybe is it mootness? Is it that the claim is just substantively disallowable based on on the how this case is developed at this point? I think the court could go either way on that question. But counsel, let me ask you one other thing. The payments are attributed to would there ever be interest owed on any of this that would take it beyond the $1.25 million? Your Honor, thank you, Judge Graver. I was going to address that. So as part of the proof of claim, there was a component for interest that was explicitly claimed in the proof of the claim for interest was disallowed on summary judgment. And the bankruptcy court held that interest was just simply not legally available for multiple reasons, including that no demand was ever made, that there's no entitlement to interest under the contract and a variety of other reasons. That was all decided on summary judgment. And those those particular issues have not been appealed. And so at this stage of the proceeding, there is no entitlement to interest that has been established. What also has been established are two things which which sort of conspire to to move this this appeal. One is, as has been noted on summary judgment, the bankruptcy court disallowed part of the claim on the basis of the statute of limitations. So in other words, the fees that accrued between 2004 and 2008 are time barred. And so in the briefs and in the post-trial briefs that were submitted, KCI has conceded correctly, and it's just based upon math, that the amounts that would be due conceptually, conceivably would be due on remand if the court accepts all of KCI's positions here, that amount would be about eight hundred and seventy thousand dollars. However, as we've been discussing prior to the bankruptcy, KCI took one point two million dollars to pay itself management fees. I want to correct another misunderstanding of the record that was suggested this morning that that the one point two million dollars was taken into account in the proof of claim. That's simply incorrect. And if the court the proof of claim is volume 40 of the excerpts at page sixty nine eighty. And it's it's quite plain that the eight hundred and seventy thousand dollars simply is the face value of the claim. It's the monthly fee that they calculate under the contract multiplied by the number of months after the cutoff date in 2008 that Sky Colonial remained as the manager. So and then if you read down further into the proof of claim, there's a line item where you would have to then acknowledge you would have to subtract the one point two million from the amounts that have been allowed. So the eight hundred and seventy thousand does not reflect any offset for the amounts that have already been paid. So if we if we put all this together, I mean, the court has really already done so. You subtract one point two million dollars from eight hundred and seventy thousand dollars and we conclude that KCI has already been overpaid on allowable claims, meaning that if the court were to reverse, there is no other relief that could be provided by the bankruptcy judge. I'm wondering why that wasn't raised in in your opposition. In our in our in our answering brief, yes, yes, Judge Burns, we raised the issue that KCI has been overpaid. We did not explicitly discuss it in terms of mootness. I think our thinking at the time was more in terms of there's simply no claim here on the substance of on the merits. But I I could see the court seeing this as moot in the same sense in terms of the appeal being moot because there is no substantive relief that can be provided on on remand. I'd like to address the. Can I ask you a question? You can address the reasonableness of the claims and the argument that this was a new test. There should have been a different test apparently applied here. Yeah, and I'm happy to do so, Judge Murdia. Thank you for the question. The the argument really is that the court should only have looked at the contract rate at the time that it was first adopted in the year 2000, although the fees that are at issue here accrued eight or 10 or 13 years later. The simplest answer to the court's question is that the court has already rejected these kinds of and that case really addresses each of the arguments that were that are that are being advanced here. First of all, this idea that this was a new test because the court applied factors and CWS, this court addressed really precisely that issue and held that, you know, 502 B4 says that the fees should be allowed, disallowed if they are unreasonable. And this court held that reasonable under the bankruptcy code does not have any sort of specific or special meaning. It rather it means simply what it means in ordinary English. And the court further held that there is no mechanical formulation of what you know, there's no mechanical test of what reasonableness means under the bankruptcy code. And the court then proceeded to say, you know, there are here are some of the factors that a court might consider, but there are others. And in other cases, you know, the court has made clear that, you know, what factors are significant in what cases is really dependent on the facts of each individual case. And so there is no, you know, factor based tests or reasonableness under the bankruptcy code that that's been established by by prior precedent. And so what the bankruptcy court did here was exactly right. And if you read the court's order, she goes through in quite detail citing these provisions from CWS and some of the BAP cases that have applied it and says, you know, I'm going to consider reasonableness in the totality of the circumstances, which is exactly what is required. And, you know, the court has read some cases. And here are the factors. Here are the facts that I think are significant to my assessment of reasonableness in this case. And so the real, I think, grievance here being asserted by KCI is that they didn't know in advance what facts the court was going to find to be significant. And that is simply not a due process or notice problem. The same could be said, you know, in any case. And so there's no new test here. The test is reasonableness. That is the only test. It's been the same test since the day of the trial. So I don't think these are any real surprise. I mean, the factors that the court considered here as sort of, you know, indicative of what she felt reasonableness was, are factors that have been discussed in numerous cases. They're factors that are equivalent to the ones that were discussed by this court in CWS. You know, in the briefs, we cite numerous bankruptcy appellate panel and trial court decisions that apply similar factors. So there's simply no surprise here. Certainly not any kind of a new test. The second part of the argument is that the proper test would have been to provide some kind of deference or presumption to the contract statements because there was a percentage set forth in a contract. Well, once again, in CWS, this court rejected, you know, implicitly, you know, that argument wasn't made, but because the court said, you know, in articulating what the factors would be for reasonableness, one of them certainly was, you know, is there a contract and what does the contract say? Those are perfectly legitimate things for the court to consider. The court also articulated other factors such as, you know, what, what was the work that was actually done? What were the circumstances at the time that the work was done? Clearly, the court was is not simply was the contract reasonable at the time of formation, but also what were the circumstances at the time? And that's entirely consistent with the plain text of the statute, which says that the court is, it doesn't say, you know, the court is to consider and decide the reasonable, reasonableness of a fee agreement. It says the court is to consider and decide the reasonable value of the services that were rendered. And certainly, you know, what the contract says is evidence that can be considered on that point, but it can't be the only factor. And, you know, once the final point I'll make on that issue is once again, in CWS, the court basically adopted reasoning from, I believe it was a fifth circuit case that laid out the steps the bankruptcy court is supposed to undertake under 502B4. And the first two steps are to decide, you know, is there a contract and was it damages that would be available for the breach? May I ask you a question about the contract terms? As I understand it, it was 1% of the funds under management. Is that right? Well, that, well, yes and no, judge. So that is not how KCI interpreted it. Well, let's assume that that was the agreed upon amount. My question is this, the high watermark for investment by the investors was $17,438,000. But those funds were paid back. Actually, more than that was paid back as of March 2010. But the management fee continued to be paid at a fee that assumed $17 million was still under management when the amount was actually, what, a million two for the last two or three years? That's exactly right, Judge Burns. And that was a critical factor to the bankruptcy court's decision. Would it have been reasonable for a trier of fact to say, wait a minute, this doesn't comport with even the original understanding of what the management fee should be because the amount is much less for the last two and a half years? Yes, it would. And that's essentially what the bankruptcy court said. And there was expert testimony on this issue confirming exactly what you have just said, Judge Burns, unrebutted expert testimony that in these sorts of private equity deals, you know, it is typical to have a percentage of capital under management. But during the time periods that we care about here after 2008, the number of capital under management was not just 1.2 for two or three years, it was 1.2 for about five years. And yet KCI was seeking fees based on a $17 million capital contribution. Furthermore, the $1.2 million after 2008 was not being managed, you know, to as an investment to create a return. It was being passively held in a checking account, you know, as a reserve, after the further commented on that and said, you know, that's simply not done anywhere, that's, that's not reasonable. And so, you know, there's plenty of evidence here, that during the time periods we care about, that this fee was was grossly excessive, and was, you know, basically, we've talked about the policy reasons for 502 before, one of them is this danger that a manager will overreach. And here, that's precisely what happened, this manager was overreaching, and claiming a fee based on active management of a $17 million investment, when in fact, after 2008, it was a million dollar checking account that was just sitting there. And that that's clearly overreaching. And the fee, you know, to the extent that was ever the real agreement that would that would have been an over generous agreement, which is the second reason why we have 502 before. And so for those reasons are we think this appeal is moot and on the merits, nevertheless, should be affirmed. Thank you very much, Mr. Asadat. I think you had no time, but I'll give you a minute. Thank you for your generosity. Judge, I'll make this very quick. The footnote, Judge Murguia, Chief Judge Murguia referenced mentioned that it was unclear what was what the 1.25 million went to. As I stated, Arizona law says that if it's unclear what it went to, then it's appropriate to allocate it to the earliest unpaid payment. That's from the Arizona cases I cited earlier. Also, it is important for me to mention doesn't appear that you made that clear to the to the judge when you were arguing that. I, I, if the court would like me to make a supplemental brief to look into the is what we have made below. Also, KCI has a claim for indemnity in the amount of $70,000. That's a separate reason. There is a concrete interest taken by the case is not. That was an appeal we made from the summary judgment ruling to this court. And it's important to make clear that the ramifications for determination that the case is moot here. If the case was moot from the beginning, from the inception of this case, before the bankruptcy began, and got received a $1.25 million payment, that would mean that there was never jurisdiction from day one. The bankruptcy court never had jurisdiction in this case. In that scenario, the only proper outcome would have been would be for this court to vacate all the victims courts and remand with instructions to dismiss the entire proof of claim proceeding. I have to clarify for the record, because my friend on the zero, it is not. The operative proof of claim is at ER 7278. And my friend mentioned that interest is off the table altogether. But that's not right. The bankruptcy court ruled only pre-bankruptcy interest. KCI is entitled to interest running from the filing of the proof of claim, which was seven years ago. Thank you. Thank you very much. Thank you both for your oral argument presentations here today. The case of Sky Financial Investments, KCI Restaurant Management versus Omaha Seldins is now submitted. And that concludes our docket for this morning. We are adjourned. Thank you. This court for this session stands adjourned.
judges: MURGUIA, GRABER, Burns